## WOLFE *et al. v.* VAUGHN.

*(Knoxville,* September Term, 1940.)

Opinion filed June 28, 1941.

Jones & Davis, of Athens, and Sizer, Chambliss & Kefauver, of Chattanooga, for plaintiffs in error.

E. B. Madison and H. M. Gregory, both of Athens, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

This is a suit to recover damages for personal injuries. The parties will be referred to as they appeared in the trial court; that is, Effie Vaughn as plaintiff, and W. C. Wolfe and McCormick Sales Company as defendants. The jury returned a verdict in favor of plaintiff against both defendants for $5,000 for injuries which she sustained, and for the additional sum of $2,000 for medical, hospital and physicians' expenses, in all $7,000. The verdict was approved by the trial court and his judgment affirmed by the Court of Appeals. The case is before us on the petitions of defendants for writs of *certiorari*.

The plaintiff, Effie Vaughn, aged six years at the time of the injury, was living in the town of Englewood in McMinn County. On the afternoon of January 20, 1938, as she was returning from school to her home and while on one of the principal streets of Englewood, she was

struck and seriously injured by an automobile driven by defendant Wolfe and was carried to the hospital of Dr. Foree in Athens, where she remained for eight months, during the first two months of which period she remained unconscious practically all the time.

W. C. Wolfe, at the time of the accident as well as both prior and subsequent thereto, was the traveling salesman of the defendant, McCormick Sales Company, a foreign corporation authorized to engage in business in this State. Wolfe lived in Knoxville and used an automobile in covering his territory, which included McMinn County. Before entering upon the trial of the case Wolfe withdrew all of his pleas and entered a plea of guilty, the only question to be determined so far as he was concerned being the amount for which he was liable.

The defendant, McCormick Sales Company, filed numerous pleas: one denying that Wolfe was its agent or employee, and another by which it was claimed that Wolfe was an independent contractor. Neither defendant introduced any testimony. The fact that Wolfe was the regular traveling salesman of his codefendant was established by Charlie Pardue and A. N. Nation. On the day of the accident Nation testified that Wolfe visited his place of business in Englewood and was given an order for the McCormick Sales Company, and that when Wolfe departed he left two cases containing samples of the chemicals (Bee Brand) manufactured and sold by that company. Shortly after the accident B. F. Vaughn had a conversation with Wolfe, from which we quote the following: "I asked him why he was driving so fast in a school zone. He said he had left some brief cases . . . He told me he had forgotten some brief cases at Nation's store, and had gotten nearly to Madisonville and was coming after them."

■ From the foregoing testimony, which is in no wise contradicted, we think it clearly appears that Wolfe was the agent and servant of the McCormick Sales Company and was engaged in the business of his master and acting within the scope of his employment when this accident occurred.

It is said that the foregoing testimony of Vaughn was incompetent. The other courts very properly held to the contrary. Wolfe was a defendant and what he said as to the circumstances under which he struck the plaintiff was competent. The exception was entirely too general, and the court was not asked to limit the testimony of Vaughn to the defendant Wolfe.

■ We think the damages awarded the plaintiff for her injuries quite reasonable, and we will refer to the extent of her impairment and suffering later.

The principal contention made by the defendants relates to the item of $2,000 for expenses, the insistence being that the law confers no cause of action upon an infant for such expenses.

With respect to suits resulting from personal injuries to an infant, we quote from the Code as follows:

8630. "A father, or, in case of his death or desertion of his family, the mother may maintain an action for the expenses and the actual loss of service resulting from an injury to a minor child in the parent's service or living in the family."

8631. "An action for the injury to the child shall be brought in the name of the child."

It appears from the testimony that the mother of plaintiff died a few days before this accident. The Court of Appeals found that her father was "a *non compos*," and the correctness of that finding is not questioned. It thus appears that she has no mother and her father is

civilly dead; so that unless she could sue for these necessary expenses there was no one who could do so, and certainly the defendants were liable to some one therefor.

The next friend of plaintiff is her grand uncle. There is no evidence that the father of plaintiff has any property or that he has been caring for her, or that any other person assumed liability for these expenses.

In 46 C. J., 1301, 1302, it is said:

"An injury to a minor child gives rise to two causes of action, one on behalf of the child for pain and suffering, his permanent injury, and impairment of earning capacity after attaining majority, the other on behalf of the parent for loss of services during minority, and expenses of treatment, and the damages peculiar to one of these causes of action cannot properly be recovered in an action based on the other in the absence of any waiver or estoppel. It has been held that the causes of action may either be joined or tried separately, but other authorities have held that the two causes cannot be joined. Where the actions are tried separately, a recovery in one will not bar a recovery in the other, although the parent by suing on behalf of the child may waive his right and be estopped to bring a subsequent suit on his own behalf.

"A parent may waive or be estopped to assert his right to recover for loss of services, etc., by reason of injury to his minor child, and permit the child to recover the full amount to which both would be entitled, as where the parent as next friend brings an action on behalf of the child for the entire injury, or permits the case to proceed on the theory of the child's right to recover for loss of services and earning capacity during minority. In such case the parent treats the child as emancipated in so far as recovery for such damages is concerned, and can

not thereafter be permitted to claim that he, and not the child, was entitled to recover therefor.''

Upon principle we think that in a case of this character where a child has no parent who can sue for such expenses that she can sue for and recover the same.

In *Nichol & McGavock* v. *Steger, guardian et al.*, 74 Tenn. (6 Lea.), 393, 395, 396, it is said: "The court will only, in such case, decree against him where there is clear legal liability. Assuming this, we think the principles laid down in the case of *Elrod, Guardian,* v. *Myers,* 39 Tenn. (2 Head), [33], 35, are conclusive of this case. It is there held, that all the authorities agree that if an infant is under the care of a parent or guardian, who has the means and is willing to furnish him what is actually necessary, the infant can make no binding contract for any article whatever without the consent of his legal adviser and protector. It is added, and where it is claimed that the goods furnished were necessaries, the evidence may be rebutted by proof that the infant lived under the parental roof and was furnished with such real necessaries of life as in the judgment of his parent seemed proper. It may also be shown that he was furnished in like manner by his guardian, or that a competent allowance was made for his support, or that he was supplied with necessaries from other sources.''

In *McMinn* v. *Richmonds,* 14 Tenn (6 Yerg.), 9, it was held that an infant was liable for necessaries furnished him notwithstanding his parents were living. Counsel for defendants made no insistence that plaintiff was an infant living under the parental roof and provided with such real necessities as seemed proper, which it was their privilege to do had there been any facts to support it.

Counsel refer us to the case of *Foster* v. *Adcock,* 161 Tenn., 217, 30 S. W. (2d), 239, 70 A. L. R., 569. The question we are considering was not involved in that case. There the father sued for loss of services and expenses and recovered a judgment, and out of the recovery applied $100 on the doctor's account. The purpose of the bill in that case was to have the balance of the doctor's bill paid out of the judgment recovered by the infant. The court held that the contract was that of the father and not that of the infant.

In 31 C. J., 1114, 1115, it is said: "Since the parent is entitled to the services and earnings of the child so long as the latter is legally under his custody or control, ordinarily an infant suing for personal injuries cannot recover for the impairment of his earning capacity during infancy, or for loss of time, or for expenses in curing his injuries, when, and only when, he is under the control of his parents; after emancipation he may do so. However, he may recover for his mental or physical pain and sufferings his permanent injuries, and for the impairment of his power to earn money after arriving at majority."

For another reason we hold, as did the other courts, that defendants are in no position to resist a recovery for these expenses.. In the declaration plaintiff. asks a recovery for $25,000, and then makes this allegation:

"Plaintiff further alleges that by reason of the above injuries she has become obligated for large doctor bills, nurse hire, hospitilization, and medicines, and that she has suffered great pain, diminished eyesight, headaches, and dizziness, and that she will be crippled and scarred for the rest of her life and that the injuries have left her extremely nervous.

"Wherefore, plaintiff sues for the above amount and demands a jury to try the issues joined."

Upon motion, an order was made on defendants to plead specifically their defenses, which they did, but interposed no defense to plaintiff's right to recover these expenses.

Section 8767 of the Code provides as follows:

"Or defendant may plead specially.—Or he may on motion of plaintiff, entered of record, be ordered to plead specially his defenses, in which case he shall state the facts relied on, truly, and briefly as may be, and no matter of defense not pleaded shall be shown in evidence; and to such special plea the plaintiff shall reply, and the pleading shall proceed to issue."

The failure of defendants to question plaintiff's right to recover for expenses likely accounts for the meager testimony introduced upon this subject.

No question is made as to the reasonableness of Dr. Foree's bill of $1655, which included all hospital service, medicines, and physicians' charges during the eight months that plaintiff was in his hospital.

Dr. Foree, after testifying that plaintiff had a compound fracture of the skull and a fractured thigh, requiring the insertion of a plate in her leg, gave this testimony:

"Q. Did the child seem to be in a great deal of pain, Doctor? A. She suffered considerably.

"Q. Describe the treatment to the leg, did you have to support the leg? A. I did.

"Q. Describe to the Court and jury her position while she was in bed, while setting the leg and afterwards? A. Well, for the first six or eight weeks we could not set the leg. We had to treat the child as a whole, she was in such a critical condition. After that period of time we applied the necessary, standard treatments in attempting

to reduce the fracture and it was impossible to do it, and we had a specialist, Dr. Bagwell of Knoxville, to come down and operate on her leg. After that she was in a cast for a number of months.

"Q. Did her legs have to be stretched in the air, with any weight, Doctor? A. She did.

"Q. How long did she remain in that position with her leg stretched in the air? A. Possibly six weeks to two months."

■ Dr. Foree further testified that his account of $1,655 did not include the medical expenses of Dr. Bagwell and his fee for coming from Knoxville to Athens and performing the operation on plaintiff's leg. The record contains no evidence as to the sum due Dr. Bagwell, although it is set out in the decree as $200. If this was inserted by agreement the record does not so show. Dr. Foree testified that plaintiff would probably require further treatments. We are satisfied that the sum allowed for expenses is substantially correct.

■ Complaint is made to the action of the trial court in ordering the clerk, upon the collection of the judgment, to pay the bills of Doctors Foree and Bagwell. That is a matter that in no wise concerns defendants.

■ It is said that the court committed error in instructing the jury that they could take into consideration in assessing the damages any impairment of plaintiff's earning capacity after she becomes of age. That is a proper element to be considered. Dr. Foree testified that plaintiff has some deformity in her right leg, and that she is permanently injured to a certain extent. There is nothing to show that defendants were prejudiced by this instruction, and if, as insisted by counsel, there was no evidence upon which to base such a charge counsel should have called the court's attention thereto so as to afford

him an opportunity to correct it. *Carney and Mai* v. *Cook*, 158 Tenn., 333, 13 S. W. (2d) 322.

Error is assigned on the failure of the court to direct a verdict on the third count of the declaration. That count was not submitted to the jury. Since Wolfe had pleaded guilty and his codefendant was likewise guilty, if Wolfe was acting within the scope of his employment at the time, all questions were thereby eliminated except as to the amount plaintiff was entitled to recover.

■ Finally, a reversal is sought on the ground of misconduct of the jury. During the deliberations of the jury it seems that some casual mention was made about insurance. No member stated that either defendant carried insurance, and when the matter was mentioned some one replied that it made no difference whether they did or did not have insurance, and the members testified that the question of insurance in no wise entered into the amount of the verdict. The other courts have found that defendants were not prejudiced as a result of this incident, and in that view we concur.

■ The law prescribes no exact standard for measuring the compensation to be awarded in a case of this character. It is impossible to put a money value upon suffering and pain and to determine with precision the extent and duration of the injuries suffered; so that the amount fixed by the jury and concurred in by the trial court will be accepted upon appeal unless there is something to show a violation of the discretion. *Power Packing Co.* v. *Borum*, 8 Tenn. App., 162. Where it further appears that the verdict is approved by the Court of Appeals, such concurrence is "well-nigh conclusive" upon this Court. *Reeves* v. *Catignani*, 157 Tenn., 173, 7 S. W. (2d), 38.

This is an aggravated case for which defendants present no extenuating circumstances; neither do they attempt to excuse the operator of the automobile for the serious injuries which he inflicted upon this little child.

We find no reversible error in the record and, therefore, deny the writ.